FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC - 6 2013

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA BRABANT, | Case No. EDCV 13-00323 AN |
| Plaintiff, | MEMORANDUM AND ORDER |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising three disputed issues. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issue #1**

In evaluating Plaintiff's mental impairment of low intellectual functioning, the Administrative Law Judge ("ALJ") relied on the findings of the consultative examining psychologist, Kim Goldman, Psy.D. (AR 271-73.) Dr. Goldman conducted a complete psychological evaluation of Plaintiff in July 2008. (AR 271-73.) The results of Plaintiff's IQ tests showed that Plaintiff's verbal IQ was 71, her performance IQ was 69, and her full scale IQ was 67. (AR 271.) These scores were in the extremely low to borderline

range and characteristic of the lowest 1 to 3 percent of the general population. (AR 271.) Dr. Goldman diagnosed Plaintiff with borderline intellectual functioning, and concluded that Plaintiff was "moderately to markedly impaired in the ability to understand, carry out, and remember detailed instructions, and moderately impaired in the ability to deal with work situations and changes in routine, but could remember simple instructions and work with coworkers, supervisors, and the public. (AR 272-73.) Giving Dr. Goldman's opinion great weight, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but is limited to simple, 1- 2-step, unskilled work. (AR 56.) Based on this RFC and the testimony of a vocational expert ("VE") the ALJ determined that Plaintiff was capable of performing the jobs of table worker (Dictionary of Occupational Titles ("DOT") 734.687-010), assembler (DOT 729.687-010), autowasher (DOT 919.687-014), and paper cone drying machine operator (DOT 532.686-014). (AR 58-59, 85-86.) The ALJ concluded, therefore, that Plaintiff was not disabled at step 5 of the sequential evaluation process. (AR 58-59.)

Plaintiff argues that she is unable to perform the four jobs identified by the VE because her IQ scores fall within the bottom 3 percent of the population. (JS 4-5.) Specifically, Plaintiff notes that while all four jobs require a General Learning Ability ("GLA") aptitude level of 4, she "possesses a negligible degree of the aptitude of general learning ability (the ability to 'catch on')." (JS 5.) Plaintiff asserts that based on her IQ scores, she is limited to jobs with GLA level of 5, representing the bottom 10 percent of the population. (JS 4-5.)

The Commissioner responds that there is no authority to substantiate her argument that her low IQ scores are indicative of her GLA aptitude. (JS 6-8.) In her reply, Plaintiff apparently concedes this issue. (JS 8.) Indeed, numerous district courts have held that GLA aptitude is not directly comparable with a claimant's IQ or intellectual functioning ability. *See, e.g., Gibson v. Astrue*, CV 06-5046 JC, 2008 WL 5101822, at *5-6 (C.D. Cal. Nov. 30, 2008) (rejecting argument that general learning ability aptitude scale is comparable to IQ); *Vasquez v. Astrue*, CV 08-5305-OP, 2009 WL 3672519, at *3 (C.D.

Cal. Oct. 30, 2009) (rejecting plaintiff's argument that GLA aptitude scale is comparable to IQ or other cognitive functioning tests); *Ariola v. Astrue*, CV 09-333-CT, 2009 WL 1684542, at *4-6 (C.D. Cal. June 16, 2009); *see also Antle v. Commissioner of Social Sec. Admin.*, 3:10-CV-02136-BF, 2012 WL 833200, at *8-9 (N.D. Tex. Mar. 13, 2012); *Gaspard v. Soc. Sec. Admin.*, Comm'r, 609 F.Supp.2d 607, 613 (E.D. Tex. 2009). While Plaintiff references the Department of Labor's 1991 *Revised Handbook for Analyzing Jobs* ("Handbook"), the Handbook makes no mention of utilizing a claimant's IQ score to determine her level of aptitude.[1] (JS 5.) Nor is the Handbook a source from which the Social Security Administration has taken administrative notice. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 128 (3rd Cir. 2002) ("aptitude levels are not in the DOT or any other source of which the Social Security Administration has taken administrative notice."). Moreover, as discussed below, the ALJ's finding that Plaintiff is capable of performing simple, 1- to 2-step, unskilled work adequately takes into account Plaintiff's limitations in mental functioning. Thus, Plaintiff is not entitled to remand on this issue.

Next, Plaintiff contends the ALJ's RFC determination did not adequately account for Dr. Goldman's findings that Plaintiff has "moderate" limitations in the ability to respond appropriately to usual work situations and deal with changes in a routine work setting. (JS 5; AR 273.) The Commissioner asserts that the ALJ's RFC assessment is consistent with all of the restrictions assessed by Dr. Goldman. (JS 9.)

In the decision, the ALJ discussed Dr. Goldman's opinion, along with the other medical evidence in evaluating Plaintiff's mental impairments. (AR 55-57.) In particular, the ALJ expressly considered Dr. Goldman's findings that Plaintiff was moderately impaired in her ability to respond appropriately to usual work situations and in dealing with changes in a routine work setting, and concluded that these limitations resulted in moderate difficulties in maintaining concentration, persistence, and pace. (AR 55.) The

---

[1] The Handbook provides that aptitudes "are the capacities or specific abilities which an individual must have in order to learn to perform a given work activity." Handbook at 9-1. The GLA is one of 11 aptitude factors considered in the rating process for each job. Handbook at 9-1.

ALJ explained that the limitations in the "paragraph B" and "paragraph C" criteria, however, are used in rating the severity of a mental impairment at steps 2 and 3 of the sequential evaluation process. (AR 56.) As such, the ALJ proceeded to translate the "B" and "C" criteria findings into detailed work-related functions in the RFC assessment. (AR 56.)

In determining Plaintiff's RFC, the ALJ properly relied on the opinions of the state agency medical consultants, Dr. Amado and Dr. Skopec. (AR 57-58, 274-76, 297); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1989) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). In August 2008, Dr. Amado reviewed the medical record, including Dr. Goldman's opinion, and concluded that Plaintiff was capable of understanding and remembering simple tasks. (AR 276.) While Dr. Amado noted that Plaintiff has moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions and perform at a consistent pace, and respond appropriately to changes in the work setting, Dr. Amado concluded that Plaintiff could maintain adequate persistence and pace over the course of an 8-hour day. (AR 274-76.) Likewise, in November 2008, Dr. Skopec, discussed Dr. Goldman's opinion suggesting moderate impairment in Plaintiff's ability to maintain concentration, persistence and pace, but concluded that Plaintiff's ability to understand simple, 1- to 2-step commands and perform simple unskilled work was not impaired. (AR 296.) Based on the medical consultants' opinions, the ALJ concluded that Dr. Goldman's assessment that Plaintiff is capable of understanding, remembering and carrying out simple instructions indicated that Plaintiff maintained an RFC for simple, unskilled, 1- to 2-step work, despite limitations in the ability to respond

appropriately to usual work situations and in the ability to deal with changes in a routine work setting. That determination was reasonable, as a position limited to simple, 1- 2-step tasks would logically involve a reduced amount of change or challenges in the work setting. The ALJ did not err by failing to repeat each functional limitation verbatim in the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence or pace).

Further, Plaintiff contends that the ALJ erred by relying on the VE's testimony because the hypothetical did not include Dr. Goldman's findings as to Plaintiff's impaired ability to respond appropriately to usual work situations and changes in the work setting. (JS 11.) As discussed, however, it is not evident that such impairments would translate into any additional restrictions in Plaintiff's RFC. *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had claimed, but had failed to prove.") Therefore, this argument is rejected.

Reversal is not warranted based on the claims raised in Issue #1.

### Issue #2

Plaintiff alleges that she cannot work due to a learning disorder, difficulty getting along with others, and inability to spell. (AR 210.) Plaintiff contends that the ALJ improperly rejected her subjective symptom testimony based solely on the extent of her daily activities. (JS 11-14, 17-18; AR 56-57.)

The ALJ found that Plaintiff's statements concerning her symptoms and limitations were not credible to the extent they conflicted with her RFC. (AR 57.) The ALJ cited Plaintiff's acknowledged daily activities as inconsistent with her claimed inability to work. (AR 56-57.) The record shows that Plaintiff engages in a wide range of activities, including household chores, washing dishes, doing laundry, preparing simple meals, going for walks, meeting friends at the mall and movies, going to stores

with her sisters, and watching television. (AR 56-57, 72-82.) Although Plaintiff's activities may not rise to the level of transferable work skills, they undermine her claim of total disability. *Light v. Social Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (explaining that even when participation in everyday activities indicates some difficulty functioning, those activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

Further, the ALJ noted that Plaintiff's father submitted a third party statement indicating that Plaintiff spends "all day" involved in various forms of social media, including talking and "texting" on the phone and communicating through "My Space." (AR 57, 213, 217.) The ALJ properly found that these activities were indicative of a greater capacity for work activity than Plaintiff was willing to acknowledge. (AR 57); *Molina*, 674 F.3d at 1113. Moreover, although the evidence showed that Plaintiff used a computer daily, the ALJ noted that Plaintiff testified that she does not have a computer at home and does not work on a computer. (AR 57, 80, 209, 217.) Such evidence supports the ALJ's conclusion that Plaintiff was not as limited as she alleged. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may use "ordinary techniques" in addressing credibility); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (ALJ is entitled to draw inferences "logically flowing from the evidence").

Based on the above, the ALJ properly discounted Plaintiff's credibility for specifically, clear and convincing reasons. Accordingly, the Court rejects Plaintiff's contention that reversal is warranted based on Issue #2.

### Issue #3

Plaintiff asserts that the ALJ's reliance on the VE testimony was error because the VE failed to identify a significant number of jobs available in the region where she lives or in several regions of the country. (JS 18-21, 23-24); 20 C.F.R. § 416.966(a).

A claimant is found not disabled at step 5 of the sequential analysis if she can

1 perform "other work" that exists in significant numbers in the national economy. 20
2 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). Work exists in the national economy when it
3 "exists in significant numbers either in the region where such individual lives or in
4 several regions of the country regardless of whether such work exists in the immediate
5 area in which [she] lives, or whether a specific job vacancy exists for [the claimant], or
6 whether [she] would be hired if [she] applied for work." 42 U.S.C. §§ 423(d)(2), 1382(c);
7 20 C.F.R. § 416.966(a). However, "[i]solated jobs that exist only in very limited numbers
8 in relatively few locations outside of the region where [the claimant lives] are not
9 considered "work which exists in the national economy." 20 C.F.R. § 416.966(b).

10  Plaintiff seeks to define the term "region" in this case as the Metropolitan
11 Statistical Area ("MSA") of Riverside-San Bernardino-Ontario, where Plaintiff resides.
12 (JS 20.) The Social Security Act, however, does not define the term "region" in that
13 manner. Rather, the regulations provide that it does not matter whether work exists in the
14 immediate area where a claimant lives. 20 C.F.R. § 416.966(a)(1). In the absence of
15 Ninth Circuit authority indicating that the State of California cannot be considered an
16 appropriate "region," Plaintiff's interpretation of the term "region" is rejected. *See, e.g.,*
17 *De La Cruz v. Astrue,* 1:08-cv-0782 DLB, 2009 WL 1530157, at *10 (E.D. Cal. May 28,
18 2009) (rejecting the proposition that 2,756 jobs in California was not a significant
19 number of jobs); *Hixon v. Astrue,* 2:11-cv-00152, 2012 WL 2501069, at *5 (E.D. Cal.,
20 June 27, 2012) (finding that 56,000 positions in California constituted a significant
21 number of jobs in the national economy); *see also Trimiar v. Sullivan,* 966 F.2d 1326,
22 1329-32 (10th Cir.1992) (finding no error in the ALJ's finding that 650 to 900 jobs in
23 the state of Oklahoma constituted a significant number); *Gonzalez v. Sec'y of Health and*
24 *Human Serv.,* 773 F.Supp. 994, 996 (W.D. Mich. 1991) ("The fact that the statute speaks
25 in terms of work existing in the national economy and does not restrict the Secretary to
26 consideration of work that exists in the immediate area of a claimant's residence gives
27 the Secretary sufficient latitude to treat an entire state as the region to be considered.")
28 (internal quotation marks and citation omitted); *Barrett v. Barnhart,* 368 F.3d 691 (7th

Cir. 2004) (explaining that VEs often testify about the number of jobs that exist in the applicant's state).

Here, the ALJ identified 182,800 positions in the State of California that Plaintiff is capable of performing.[2] (AR 58, 85-86.) Though the Ninth Circuit has never clearly established the minimum number of jobs necessary to constitute a significant number, *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012), 182,800 positions far exceed the numbers found to be significant in other cases. *See, e.g., Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in San Diego County and 64,000 jobs nationwide is a significant number of jobs); *Barker v. Sec'y Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,266 jobs in the local areas is within the statutory parameters); *Albidrez v. Astrue*, 504 F.Supp.2d 814 (C.D. Cal. 2007) (1,445 to 1,700 regional jobs and 17,382 to 20,450 national jobs constituted significant numbers of jobs); *De La Cruz*, 2009 WL 1530157, at *10; *Hixon*, 2012 WL 2501069, at *5; *Trimiar*, 966 F.2d at 1329-32. And, while California may be a large state, Plaintiff does not offer any argument or citation to authority suggesting that the positions identified by the VE were isolated or existed in limited numbers in relatively few locations. *See* 20 C.F.R. § 416.966(b); *see also Barrett*, 368 F.3d 691 (7th Cir. 2004) ("the principal significance of the 'other regions' language in the statute is to prevent the Social Security Administration from denying benefits on the basis of 'isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the applicant] live[s]'" (quoting 20 C.F.R § 404.1566(b)). Thus, the ALJ's conclusion that the jobs Plaintiff could perform existed in significant numbers in the national economy was supported by substantial evidence.

A reversal or remand is not warranted on the basis of Issue #3.

---

[2] The ALJ relied on the testimony of the VE to identify the following positions available to Plaintiff: table worker with 133,000 jobs in California and 549,000 jobs nationally, assembler with 31,000 jobs in California and 115,000 jobs nationally, auto washer with 5,700 jobs in California and 280,000 jobs nationally, and paper cone drying machine operator with 13,100 jobs in California and 105,000 jobs nationally. (AR 58, 85-86.)

# ORDER

The Court finds that the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is GRANTED. The clerk shall enter judgment, close the file and terminate all pending motions.

DATED: December 6, 2013

_____
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE